UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DAVID BRYAN ALLEN,

    Applicant,

v.                                                                              CASE NO. 8:22-cv-2133-SDM-SPF

SECRETARY, Department of Corrections,

    Respondent.
_____/

**<u>ORDER</u>**

    Allen applies under 28 U.S.C. § 2254 for the writ of habeas corpus (Doc. 1) and challenges his conviction for lewd or lascivious battery, for which Allen is imprisoned for fifteen years. The respondent argues (Doc. 6) that three of the grounds are time-barred, that Allen is not entitled to the actual innocence exception to the limitation, and that ground four alleges no claim upon which relief can be granted. Allen erroneously argues (Doc. 10) that his grounds are timely and that he is entitled both to the actual innocence exception and to relief under ground four.

    Under the Anti-Terrorism and Effective Death Penalty Act, 28 U.S.C. § 2244(d)(1)(A), "[a] 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of . . . the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking

such review . . . ." Additionally, under 28 U.S.C. § 2244(d)(2), "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection."

**Timeliness: Grounds One – Three**

The respondent correctly argues that the application is untimely for grounds one, two, and three. Allen's conviction became final on March 14, 2017.[1] Absent tolling for a timely post-conviction application in state court, the federal limitation would bar his claim one year later on March 14, 2018. *See Downs v. McNeil*, 520 F.3d 1311, 1318 (11th Cir. 2008) (applying "the 'anniversary method,' under which the limitations period expires on the anniversary of the date it began to run," as "suggested" in *Ferreira v. Sec'y, Dept. of Corr.*, 494 F.3d 1286, 1289 n. 1 (11th Cir. 2007)). Allen let 128 days elapse before on July 21, 2017, he moved under state Rule 3.800(c) to mitigate sentence, and tolling continued until November 30, 2017, when the state circuit court denied the motion. (Respondent's Exhibits 27 and 28) Allen had 237 days remaining (365 − 128 = 237). Allen let another 154 days elapse before on May 4, 2018, he moved under state Rule 3.850 for post-conviction relief, and tolling continued until May 5, 2021, when the state district court affirmed and issued the mandate. (Respondent's Exhibits 36 and 58) Allen had 83 days remaining (237 − 154 = 83). Consequently,

---

[1] Allen's direct appeal concluded on December 14, 2016. (Respondent's Exhibit 20) The conviction became final after ninety days, the time allowed for petitioning for the writ of *certiorari*. 28 U.S.C. § 2244(d)(1)(A). *See Bond v. Moore*, 309 F.3d 770 (11th Cir. 2002), and *Jackson v. Sec'y, Dep't of Corr.*, 292 F.3d 1347 (11th Cir. 2002).

Allen's one-year deadline was July 27, 2021 (May 5, 2021 + 83 days = July 27, 2021). Allen dated his federal application September 15, 2022, more than a year late.

Allen filed two earlier federal actions and two additional state actions before the one-year deadline, but none tolled the limitation. Allen filed an application under Section 2254 (8:17-cv-244-VMC-TBM), which was stricken (Respondent's Exhibits 23 and 26), and he filed another federal application (8:18-cv-215-SDM-JSS), which he voluntarily dismissed to complete the exhaustion process for a claim based on newly discovered evidence (the basis for the pending ground four discussed below). (Respondent's Exhibits 30 and 34–35) Neither earlier federal action afforded tolling because the one-year limitation is not tolled during the pendency of a Section 2254 application. *Duncan v. Walker*, 533 U.S. 167, 182 (2001).

Allen filed two papers in state court captioned as requests for a "Writ of Habeas Corpus to Prevent a Manifest Injustice" (Respondent's Exhibits 59 and 68), which were dismissed as procedurally barred and untimely motions for post-conviction relief under Rule 3.850. (Respondent's Exhibits 60 and 69) Section 2244(d)(2) permits tolling only for a "properly filed application for state post-conviction or other collateral review . . . ." As *Artuz v. Bennett*, 531 U.S. 4, 8 (2000), instructs, "an application is 'properly filed' when its delivery and acceptance are in compliance with the applicable laws and rules governing filings. These usually prescribe, for example, the form of the document, the time limits upon its delivery, the court and office in which it must be lodged, and the requisite filing fee." As a consequence, only an application timely filed under state law tolls the federal limitation. "When a post-conviction petition is untimely under state

law, 'that [is] the end of the matter' for purposes of § 2244(d)(2)." *Pace v. DiGuglielmo*, 544 U.S. 408, 414 (2005) (brackets original) (quoting *Carey v. Saffold*, 536 U.S. 214, 226 (2002)). *See also Allen v. Siebert*, 552 U.S. 3, 7 (2007) ("Because Siebert's petition for state post-conviction relief was rejected as untimely by the Alabama courts, it was not 'properly filed' under § 2244(d)(2). Accordingly, he was not entitled to tolling of AEDPA's 1-year statute of limitations."); *Gorby v. McNeil*, 530 F.3d 1363, 1366 (11th Cir. 2008) (applying *Pace*); and *Webster v. Moore*, 199 F.3d 1256, 1259 (11th Cir. 2000) ("We therefore conclude that the state court's holding that Webster's Rule 3.850 petition was time-barred is due deference."). Allen's two untimely state Rule 3.850 motions for post-conviction relief failed to toll the limitation.

Lastly, on September 15, 2021, nearly two months after the federal deadline, Allen filed another Rule 3.800 motion to correct sentence (Respondent's Exhibit 70), which motion afforded Allen no tolling because, as shown above, the limitation had already expired. *Tinker v. Moore*, 255 F.3d 1331, 1335 n.4 (11th Cir. 2001) ("[A] properly and timely filed petition in state court only tolls the time remaining within the federal limitation period.").

**Actual Innocence: Ground Four**

Allen asserts entitlement to the "actual innocence" exception to the limitation based on newly discovered evidence of his innocence, and in ground four Allen contends that his new evidence of actual innocence means that the state lacked sufficient evidence to prove the "*corpus delicti*." As *Bousley v. United States*, 523 U.S. 614, 623 (1998), explains, "'actual innocence' means factual innocence, not mere legal

- 4 -

insufficiency." *House v. Bell*, 547 U.S. 518, 538 (2006) (internal citation omitted), explains that the applicant's burden, although demanding, is not absolute proof of innocence:

> [I]t bears repeating that the *Schlup*[2] standard is demanding and permits review only in the "extraordinary" case . . . . At the same time, though, the *Schlup* standard does not require absolute certainty about the petitioner's guilt or innocence. A petitioner's burden at the gateway stage is to demonstrate that more likely than not, in light of the new evidence, no reasonable juror would find him guilty beyond a reasonable doubt — or, to remove the double negative, that more likely than not any reasonable juror would have reasonable doubt.

A sufficient showing of "actual innocence" can overcome the limitation bar, as *McQuiggin, Warden, v. Perkins*, 569 U.S. 383, 386–87 (2013) (brackets original), explains:

> We hold that actual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar, as it was in *Schlup* and *House*, or, as in this case, expiration of the statute of limitations. We caution, however, that tenable actual-innocence gateway pleas are rare: "[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Schlup*, 513 U.S. at 329, 115 S. Ct. 851; *see House*, 547 U.S. at 538, 126 S. Ct. 2064 (emphasizing that the *Schlup* standard is "demanding" and seldom met). And in making an assessment of the kind *Schlup* envisioned, "the timing of the [petition]" is a factor bearing on the "reliability of th[e] evidence" purporting to show actual innocence. *Schlup*, 513 U.S. at 332, 115 S. Ct. 851.

To qualify for the actual innocence exception Allen must prove that he did not commit the criminal offense for which he is imprisoned. Although Allen may challenge his conviction if he can show that he is "actually innocent" of the offense,

---

[2] *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

"actual innocence" is not a separate claim that challenges the conviction but a "gateway" through which a defendant may pass to assert an otherwise time-barred or procedurally barred federal claim.[3] Passage through the gateway is difficult because "[t]o be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence — whether . . . exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence — that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). The gateway is narrow and opens "only when a petition presents 'evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error.'" *McQuiggin, Warden, v. Perkins*, 569 U.S. 383, 401 (2013) (quoting *Schlup v. Delo* 513 U.S. 298, 316 (1995)).

A jury convicted Allen of lewd and lascivious battery of Ms. Reed, which conviction was based in part on Ms. Reed's trial testimony. As his fourth ground for relief and as the basis for his claim of actual innocence, Allen relies on Ms. Reed's recantation of her trial testimony. At an evidentiary hearing on Allen's motion for post-conviction relief, the state court heard the testimony of Ms. Reed, Ms. Warren (the victim's mother), and a state investigator, and after the hearing the court entered

---

[3] To the extent that Allen asserts a claim of "actual innocence" as a "free standing" claim — in addition to asserting "actual innocence" as a means of escaping the limitation's bar — the Supreme Court has never recognized the existence of a "free standing" claim. *See McQuiggin v. Perkins*, 133 S. Ct. 1924, 1931 (2013) ("We have not resolved whether a prisoner may be entitled to habeas relief based on a freestanding claim of actual innocence.") (citing *Herrera v. Collins*, 506 U.S. 390, 404–05 (1993)).

- 6 -

the following written findings that the recantation is not credible (Respondent's Exhibit 49 at 5–6) (references to record omitted):

> After reviewing the pleadings, the record, and evidence presented at the evidentiary hearing, the Court finds claim five[4] to be without merit as Defendant has not presented credible evidence of such a nature that it would probably produce an acquittal on retrial. As to Ms. Warren, the Court finds her testimony completely incredible based on her demeanor in the courtroom. The Court finds that throughout her testimony, Ms. Warren appeared to be under the influence of an unknown substance and appeared to occasionally doze off while on the stand.
>
> The Court also finds incredible Ms. Reed's testimony. First, the Court does not believe that Ms. Reed wrote the affidavit in question. When questioned by the Court about how the affidavit came to be written, Ms. Reed could only generally answer that she went to the library and a friend helped her. Ms. Reed appeared confused about who helped her where she testified both that several people told her they had been in the same situation and immediately thereafter testified the people who helped her had not been in the same situation but had explained to her how she could "make it right." The Court believes that the testimony of both Ms. Warren and Ms. Reed on November 21, 2019, was, at its core, an orchestrated attempt by these witnesses to perpetrate a fraud upon this Court.
>
> Furthermore, the Court finds the testimony of [the state investigator] to be more credible than Ms. Reed's testimony based on their demeanors in the courtroom. Based on [the investigator]'s testimony, the Court finds that during Ms. Reed's March 19, 2019, interview at the State Attorney's Office, Ms. Reed failed to mention her mother's attempt to get Defendant to pay $500.00,[5] failed to mention the fact that her panties were on the floor, and failed to mention that Defendant ejaculated on the panties. The Court finds it unbelievable that Ms. Reed would leave out these critical portions of her story during the interview at the State Attorney's Office.
>
> For the above reasons, the Court finds Defendant has not presented credible evidence likely to result in an acquittal on

---

[4] Allen's claim five in the state proceeding is his ground four in his federal action.

[5] Allegedly, the mother attempted to force Allen to pay her $500 to not press charges.

> retrial. To the contrary, the Court finds the evidence presented by Defendant at the evidentiary hearing to be completely unbelievable. Thus, in light of the DNA evidence that would still be available to the State upon retrial, the Court finds Defendant has not met his burden under a newly discovered evidence claim. *See Green v. State*, 975 So. 2d 1090, 1099 (Fla. 2008) (*citing Jones v. State*, 709 So. 2d 512,521 (Fla. 1998)) ("Second, the newly discovered evidence must be of such nature that it would probably produce an acquittal on retrial.").

Allen's claim of actual innocence depends wholly on the credibility of Ms. Reed's favorable recantation testimony over her unfavorable trial testimony. The state court found that her recantation is not credible. The state court's credibility determination is presumed correct and generally bind this court. *Consalvo v. Sec'y for Dep't of Corr.*, 664 F.3d 842, 845 (11th Cir. 2011), explains:

> Determining the credibility of witnesses is the province and function of the state courts, not a federal court engaging in habeas review. Federal habeas courts have "no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them." *Marshall v. Lonberger,* 459 U.S. 422, 103 S. Ct. 843, 851, 74 L. Ed. 2d 646 (1983). We consider questions about the credibility and demeanor of a witness to be questions of fact. *See Freund v. Butterworth,* 165 F.3d 839, 862 (11th Cir. 1999) (*en banc*). And the AEDPA affords a presumption of correctness to a factual determination made by a state court; the habeas petitioner has the burden of overcoming the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e).

And more recently, *Nejad v. Att'y Gen., State of Georgia*, 830 F.3d 1280, 1292 (11th Cir. 2016) (underlining original), re-emphasizes the deference requirement:

> The deference compelled by AEDPA "requires that a federal habeas court more than simply disagree with the state court before rejecting its factual determinations." *Turner v. Crosby*, 339 F.3d 1247, 1273 (11th Cir. 2003) (quotation omitted). Instead, "[i]n the absence of <u>clear and convincing evidence</u>, we have no power on federal habeas review to revisit the state court's credibility determinations." *Bishop*, 726 F.3d at 1259 (emphasis added).

> [T]he trial court was presented with squarely conflicting testimony on the critical factual dispute. . . . Unless there is clear and convincing evidence in the record to rebut this credibility judgment, we are powerless to revisit it on federal habeas review.

*See also Baldwin v. Johnson*, 152 F.3d 1304, 1316 (11th Cir. 1998) ("We must accept the state court's credibility determination and thus credit [counsel's] testimony over [petitioner's]."); *Devier v. Zant*, 3 F.3d 1445, 1456 (11th Cir. 1993) ("Findings by the state court concerning historical facts and assessments of witness credibility are, however, entitled to the same presumption accorded findings of fact under 28 U.S.C. § 2254(d).").

Although he disagrees with the state court's credibility determination, Allen's disagreement is not "clear and convincing evidence" that warrants revisiting the state court's credibility determination. Consequently, Allen's asserted entitlement to actual innocence is supported by neither "new reliable evidence," *Schlup v. Delo*, 513 U.S. at 324, nor "evidence of innocence so strong that a court cannot have confidence in the outcome of the trial." *Perkins*, 569 U.S. at 401.

Allen's asserted entitlement to actual innocence is **DENIED**. Grounds One – Three in the application (Doc. 1) are **DISMISSED AS TIME-BARRED** and Ground Four is **DENIED**. Allen's motion (Doc. 14) to compel ruling is **DENIED AS MOOT**. The clerk must enter a judgment against Allen and **CLOSE** this case.

## DENIAL OF BOTH
## CERTIFICATE OF APPEALABILITY
## AND LEAVE TO APPEAL *IN FORMA PAUPERIS*

Allen is not entitled to a certificate of appealability ("COA"). A prisoner eeking a writ of habeas corpus has no entitlement to appeal a district court's denial of his application. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a COA. Section 2253(c)(2) permits issuing a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." To merit a COA, Allen must show that reasonable jurists would find debatable both (1) the merits of the underlying claims and (2) the procedural issues he seeks to raise. *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 478 (2000); *Eagle v. Linahan*, 279 F.3d 926, 935 (11th Cir 2001). Because the application is clearly time-barred, Allen is entitled to neither a COA nor leave to appeal *in forma pauperis*.

A certificate of appealability is **DENIED**. Leave to appeal *in forma pauperis* is **DENIED**. Allen must obtain permission from the circuit court to appeal *in forma pauperis*.

ORDERED in Tampa, Florida, on May 8, 2025.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE